**ORIGINAL**

**ECF**

FILED
JUL 1 2003
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**KERN OIL & REFINING COMPANY,**
**7724 Panama Lane**
**Bakersfield, CA 93307**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

No. 03-1623C

## COMPLAINT

Plaintiff Kern Oil & Refining Company ("Kern"), for its complaint against Defendant the United States of America, alleges as follows:

## JURISDICTION

1. Jurisdiction is conferred upon the Court pursuant to 28 U.S.C. § 1491(a)(1). Plaintiff brings this action pursuant to the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*

## THE PARTIES

2. Plaintiff Kern is a corporation organized under the laws of the State of California.

3. Defendant is the United States of America.

## FACTUAL BACKGROUND

4. On December 26, 1984, the defendant's Defense Fuel Supply Center or its predecessor (hereinafter "DFSC") awarded Contract No. DLA600-84-D-0521 to Kern for the supply of certain JP-5 jet fuel requirements.

5. On September 20, 1994, DFSC awarded Contract No. DLA600-94-D-0537 to Kern for the supply of certain JP-5 jet fuel requirements.

6. On August 29, 1995, DFSC awarded Contract No. SPO600-95-D-0507 to Kern for the supply of certain JP-5 jet fuel requirements.

7. On October 16, 1985, DFSC awarded Contract No. DLA600-86-D-0484 to Kern for the supply of certain JP-4 and JP-5 jet fuel requirements.

8. The contracts referenced in paragraphs 4 - 7 above are hereinafter referred to collectively as "the Contract."

9. The Contract contained DFSC's standard price adjustment clause, designated either Clause B19.33 or Clause B19.22. Pursuant to these clauses, DFSC could adjust the prices it paid to Kern for fuel based on changes in price indexes published by the Department of Energy in the *Petroleum Marketing Monthly* (hereafter the "PMM Indexes") or the indexes published by the *Platts Oilgram and Price Report* (hereinafter referred to as "POPR Indexes").

10. Pursuant to the Federal Acquisition Regulations in effect during the relevant time period, FAR § 16.203-1, economic price adjustments may be based on established prices, actual costs, or cost indexes. Price adjustments based on the PMM Indexes and/or POPR Indexes did not adjust prices in any of these three ways.

11. DFSC asserted two purposes for its price adjustment clauses generally: first, to protect the government and contractor against market fluctuations, and, second, to ensure that the prices the government pays under long-term contracts reflect fair market value.

12. Contrary to the acknowledged purposes of price adjustment clauses, the Department of Energy did not design and/or intend for the PMM Indexes and/or POPR Indexes to be used to set or adjust prices in response to market fluctuations, and the PMM Indexes and/or POPR Indexes did not reflect the fair market value for the military fuels DFSC purchased.

13. DFSC used the PMM Indexes and/or POPR Indexes in its price adjustment clause in contravention to FAR and the purposes of the clause, and despite knowing that the PMM Indexes and/or POPR Indexes were not designed to set or adjust prices in response to market fluctuations, and despite knowing that the PMM Indexes and/or POPR Indexes did not reflect fair market value.

14. As a result of DFSC's use of the PMM Indexes and/or POPR Indexes in its price adjustment clause, DFSC paid Kern prices for fuel that were materially below fair market value, in an amount that totaled not less than $7,698,711.04.

15. In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit held that the same or comparable price adjustment clauses DFSC used in Kern's Contract violated law and regulation.

16. DFSC illegally based price adjustments under the Contract on Clause B19.33 and/or Clause B19.22 resulting in prices paid to Kern that were materially below fair market value.

17. DFSC violated the law knowingly and profited from its illegal price adjustment clauses by materially underpaying Kern.

18. DFSC combined its substantial market power and substantial ability to affect the price of military fuel with a knowing violation of law and regulation to reduce the price it paid to Kern for fuel below fair market value.

19. DFSC furthermore violated law and regulation because it did not award the Contract in compliance with DFARS § 252.219-7001, in that, among other things, DFSC did not award the portion of the procurement for large businesses prior to awarding the portions set aside for small and small disadvantaged businesses, and/or did not re-solicit large businesses for the set aside portions not ultimately awarded to small and small disadvantaged businesses. Moreover, the preferences for small and small disadvantaged businesses were not narrowly tailored measures as required by the equal protection component of the Fifth Amendment's due process clause.

20. Pursuant to the Contract Disputes Act, on or about February 28, 2002, Kern submitted certified claims under the Contract to DFSC's contracting officer seeking relief from DFSC's illegal price adjustment clauses and from DFSC's violations of law in awarding and administering Kern's Contract.

21. On July 26, 2002, DFSC's contracting officer issued a final decision denying Kern's claims. In this final decision, DFSC denied that Kern was entitled to any recovery despite the fact that DFSC determined the price of fuel illegally and underpaid Kern.

22. Pursuant to the Contract Disputes Act, Kern timely filed suit challenging DFSC's July 26, 2002, final decision denying Kern's claims.

**Count I**

**(Illegality)**

23. Kern incorporates the allegations set forth in paragraphs 1 through 22 above.

24. DFSC knowingly awarded and administered Kern's Contract in violation of law and regulation.

25. DFSC's violation of law and regulation in awarding and administering Kern's Contract damaged Kern.

26. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of reformation, *quantum valebant*, or rescission and restitution.

**COUNT II**

**(Misrepresentation)**

27. Kern incorporates the allegations set forth in paragraphs 1 through 26 above.

28. DFSC's award of the Contract was an affirmative representation that the Contract complies with the law. The Contract, however, did not comply with the law.

29. In awarding and administering the Contract, DFSC, through the contracting officer and others, misrepresented and otherwise failed to disclose its violation of law and regulation.

30. In awarding and administering the Contract, DFSC, through the contracting officer and others, misrepresented and otherwise failed to disclose that the

PMM Indexes and POPR Indexes were not designed or intended to be used to set or adjust prices.

31. Kern reasonably relied upon DFSC's material and/or fraudulent misrepresentations as an inducement to enter into the Contract.

32. DFSC's material and/or fraudulent misrepresentations damaged Kern.

33. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of rescission and restitution, damages, or reformation.

## COUNT III

**(Breach of Contract)**

34. Kern incorporates the allegations set forth in paragraphs 1 through 33 above.

35. DFSC's compliance with law and regulation in awarding and administering the Contract was a material condition of the Contract upon which Kern reasonably relied in entering into the Contract.

36. DFSC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material condition of the Contract upon which Kern reasonably relied in entering the Contract.

37. In contravention of DFSC's contractual obligations, DFSC violated law and regulation in awarding and administering the Contract.

38. In contravention of DFSC's contractual obligations, DFSC based price adjustments on standards that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

39. DFSC's violation of law and regulation and use of Clause B19.33 or Clause B19.22 in awarding and administering the Contract constituted a breach of contract.

40. DFSC's breach of contract damaged Kern.

41. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of rescission and restitution, or damages.

**COUNT IV**

**(Implied-in-Fact Contract)**

42. Kern incorporates the allegations set forth in paragraphs 1 through 41 above.

43. DFSC knowingly awarded and administered Kern's Contract in violation of law and regulation.

44. DFSC's violation of law and regulation in awarding and administering Kern's Contract rendered the terms of Kern's Contract, including the price terms, invalid and unenforceable.

45. DFSC's violation of law and regulation in awarding and administering Kern's Contract damaged Kern.

46. The pricing terms of Kern's Contract are replaced by an implied-in-fact contract to pay at least the fair market value of the fuel Kern delivered to DFSC.

47. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of an implied-in-fact contract and/or *quantum valebant*.

## COUNT V

**(Failure of Consideration and Frustration of Purpose)**

48. Kern incorporates the allegations set forth in paragraphs 1 through 47 above.

49. DFSC's compliance with law and regulation in awarding and administering the Contract was a material part of the consideration upon which Kern reasonably relied in entering the Contract and a material purpose of the Contract.

50. DFSC's basing price adjustments on standards that were designed or intended to be used to set or adjust prices was a material part of the consideration upon which Kern reasonably relied in entering the Contract and a material purpose of the Contract.

51. DFSC violated law and regulation in awarding and administering the Contract.

52. DFSC based price adjustments on the PMM Indexes and/or POPR Indexes that were not designed or intended to be used to set or adjust prices, resulting in prices that were materially below fair market value.

53. DFSC's violation of law and regulation in awarding and administering the Contract constituted a failure of consideration and frustrated the purpose of the Contract.

54. DFSC's use of the PMM Indexes and/or POPR Indexes to adjust prices constituted a failure of consideration and frustrated the purpose of the Contract.

55. This failure of consideration and frustration of the purpose of the Contract damaged Kern.

56. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of rescission and restitution.

## COUNT VI

**(Mistake)**

57. Kern incorporates the allegations set forth in paragraphs 1 through 56 above.

58. Kern entered into and performed the Contract with the intent that it would comply with law and regulation. This was a material condition upon which Ken reasonably relied in entering the Contract.

59. Kern entered into and performed the Contract with the intent that the standards used to make price adjustments were designed or intended to be used to set or adjust prices. This was a material condition upon which Kern reasonably relied in entering the Contract.

60. DFSC violated law and regulation in awarding and administering the Contract.

61. DFSC based price adjustments on the PMM Indexes and/or POPR Indexes that were not designed or intended to be used to set or adjust prices and which resulted in prices that were materially below fair market value.

62. If DFSC did not knowingly award and administer the Contract in violation of law and regulation, then DFSC must be presumed to have intended to award and administer the Contract in accordance with law and regulation.

63. If DFSC did not know that the PMM Indexes and/or POPR Indexes were not designed or intended to be used to set or adjust prices, then DFSC must be presumed to have used the PMM and and/or POPR Indexes with the intent that they were designed or intended to be used to set or adjust prices.

64. As the result of a mistake relating to DFSC's compliance with law and regulation, DFSC and Kern entered and performed the Contract in violation of law and regulation.

65. If DFSC and Kern had not been mistaken, DFSC and Kern would not have entered and performed the Contract in violation of law and regulation.

66. Alternatively, if DFSC was not mistaken in awarding and administering the Contract in violation of law and regulation, then DFSC knew or should have know of Kern's mistake and failed to meet its duty timely to disclose this mistake to Kern.

67. If DFSC was not mistaken in awarding and performing the Contract using the PMM Indexes and/or POPR Indexes to set or adjust prices, then DFSC knew or should have know of Kern's mistake and failed to meet its duty timely to disclose this mistake to Kern.

68. The parties' mutual mistake and/or DFSC's failure to disclose Kern's unilateral mistake damaged Kern.

69. Kern is entitled to recover based on the fair market value of the fuel it delivered to DFSC in an amount of at least $7,698,711.04 plus interest, by way of rescission and restitution, or damages.

**COUNT VII**

**(Taking)**

70. Kern incorporates the allegations set forth in paragraphs 1 through 69 above.

71. Kern has property rights in and in relation to the fuel it delivered to DFSC. In addition, Kern has property rights in relation to DFSC's procurement of the fuel Kern delivered.

72. With no fully supporting claim of right, DFSC took possession of and infringed upon Kern's property rights in and in relation to the fuel it delivered.

73. DFSC's taking of Kern's property was for a public purpose.

74. To the extent that DFSC's taking of Kern's property was effected in conjunction with a violation of law and regulation, DFSC acted within the general scope of its authority to procure the fuel.

75. DFSC caused a taking of Kern's property within the meaning of the Fifth Amendment of the United States Constitution.

76. DFSC has not paid Kern just compensation for the taking of Kern's property.

77. DFSC's failure to pay Kern just compensation for the taking of its property violated the Fifth Amendment of the United States Constitution and thereby damaged Kern.

78. Kern is entitled to recover just compensation in an amount of at least $7,698,711.04 plus interest from the time of the taking.

**PRAYER FOR RELIEF**

WHEREFORE, Kern requests judgment as follows:

1. $7,698,711.04 plus interest, or such further amount as established prior to judgment;

2. Such other and further relief, including costs and attorneys fees, as the Court may deem just and proper.

6-30-03
Date

Respectfully submitted,

Edward J. Tolchin
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive
Suite 300
Fairfax, VA 22030
703-385-9500
703-385-9893 (facsimile)
etolchin@ftm-pc.com