of crude oil is the raw material for a wide variety of petroleum products. These products are sold in different more or less competitive geographic and spot markets. Prices in those markets are influenced by countless factors that affect supply and demand for the individual refined products. Therefore, over any given time period, changes in the market prices of some refined products, made from a portion of a barrel of crude oil, may not correlate, in either direction or magnitude, with changes in the prices of other petroleum products. In addition, industry-wide refining margins (the difference between the cost of crude oil and the price of the products refined from the crude oil) vary over time, according to conditions in both the crude oil and refined products markets. This variance can change the relationship between crude oil and refined prices.

9. Instead, the market price of the refined product purchased by the Government is a proxy for the "costs" of that part of the barrel of crude that the contractor actually used in the performance of the contracts. As such, I would expect them to protect the contractors from increases in the "costs" of the part of the barrel of crude oil containing jet fuel by assuring the contractors that they would get commensurate rises in prices for their products.

10. Because the PMM and Platts publications are refined product market publications and not a crude oil index, I would not expect them to precisely track crude oil costs on a short-term basis. However, over the longer term, meaning a year or more, I would expect the indices to move similarly.

11. I do not believe that "contractor established prices" are appropriate to adjust contracts in the petroleum industry because sellers do not necessarily make substantial volumes of sales at these prices.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed On: 10/28/03

George R. Schink
Director
Law & Economics Consulting Group

PCC K/DSS

PC

PD

C

P Sig

23 JAN 1981

DFSC-PCC

SUBJECT: Notification of a Change in Contracting Procedures - Economic Price Adjustment Basis

TO: DLA-PPR

1. Pursuant to DLPR 1-350 we are notifying you of a change in contracting procedures. Because of changes occurring in the petroleum market, we no longer plan to accept acquisition cost of crude oil as a basis for economic price adjustment on domestic bulk contracts. We have permitted price adjustments on this basis since 1973. The determining factors in using crude costs as a reference base were the Government controls on domestic crude oil and the fact that, in the aggregate, crude oil prices tracked accurately with product market prices, despite wide fluctuations in individual contractor's crude costs over short periods of time. Government controls on domestic crude oil created a situation wherein acquisition costs of crude oil borne by individual domestic contractors did not reflect world market crude oil prices. This factor contributed significantly to the contractors' inability to determine their actual crude costs and, in effect, shifted the contractor's price risk from a crude oil market basis to a crude oil cost basis. Under these circumstances, we permitted price adjustments based on acquisition cost of crude oil. As Government controls are discontinued and domestic crude oil prices approach world market crude oil prices, the price risk should shift to a crude oil market basis making price adjustments based on the cost of crude no longer necessary. The decontrol aspects of crude oil coupled with the problems of evaluating offers based on crude against the increasing number of offers with EPA based on market considerations in a competitive environment further supports our proposal to eliminate crude as an EPA reference.

2. Several years ago the market stabilized to a point where many major contractors switched to price adjustments based on a posted price in lieu of crude costs. The majority of small refiners, however, insisted on continuing price adjustments based on crude costs. Recognizing the need for both escalation bases, due to inadequate coverage, DLA-PPR letter of 6 June 1980 approved our domestic bulk long-term solicitation which allowed contractors to choose EPA based on postings or crude.

DFSC-PCC
SUBJECT: Notification of a Change in Contracting Procedures - Economic Price Adjustment Basis

Evaluation problems surfaced, however, in comparing prices offered on two such widely varying bases. More recently, the use of the two bases for evaluation has severely complicated calculation of small business set-aside prices. Because of the retroactive nature of determining cost of crude, offers based on crude oil cost escalators are based on reference prices that are 2-3 months old. Comparison of these offers with either the market range, or competitive offers based on postings or publications (all of which represent current prices), results in distortion in the evaluation procedure. We developed techniques to correct this distortion but this results in a highly complex evaluation process.

3. Offers based on crude oil cost escalators pose two basic problems for comparison against commercial market ranges for products. First, crude oil costs are not current, meaning that offered prices tied to crude oil costs cannot be current prices. In order to analyze such an offer, it is necessary to use commercial market product prices for the same time period represented by the crude oil reference. This makes it extremely difficult to determine the reasonableness of offered prices on a current basis. Second, individual contractor's prices based on crude oil cost escalators may not consistently follow product market prices. Problems inherent with crude cost escalations are magnified when competition is present. The lack of a current offered price based on crude is the most obvious problem when trying to compare offered prices based on crude cost to current offered prices based on postings. By taking earlier postings which enable us to calculate posting based prices contemporaneous with crude cost based prices, all offered prices can, for purposes of evaluation, be forced into a relatively common time frame. The difficulty with this approach, however, is that the time frame used for evaluation is significantly prior in time to the time of actual award and the effect of market developments in the interim period is virtually ignored. On the other hand efforts to update offers based on crude cost have been unsuccessful. These problems are further magnified by a changing and unstable market.

4. Our domestic bulk solicitation RFP DLA600-81-R-0061 for East and Gulf Coast requirements recently closed with 122% of the total requirement offered. Fifteen of the offers received are based on crude oil cost escalation. Fourteen of these offers are for JP-4. A breakdown

who r fifteen

DFSC-PCC
SUBJECT: Notification of a Change in Contracting Procedures - Economic Price Adjustment Basis

of the JP-4 offers is shown below:

| | | (000/USG) | |
|---|---|---|---|
| Total JP-4 Requirement | - | 1,556,430 | |
| Total JP-4 Offered | - | 2,776,685 (178% of requirement) | 93% |
| JP-4 Offers based on Crude Costs | - | 1,491,685 (54% of total offered) | |
| JP-4 Offers based on market references | - | 1,285,000 (83% of Total Requirement) | |

Of the fourteen JP-4 suppliers whose offers are based on cost of crude, several have already indicated to us that they are willing to consider changing their escalator to a posted price. While we realize the possibility exists that we may not be able to persuade some of the contractors who offered on crude costs to change their reference, we consider that the competitive nature of this procurement warrants an attempt to change from use of crude cost EPA references. We, therefore, propose to amend the solicitation to delete Clause E19.03 Economic Price Adjustment (for acquisition cost of crude). In the event withdrawal of offers should result in a shortage of product, we would resolicit the shortfall separately.

5. Recently we have been successful in persuading several contractors who would not consider switching from cost of crude to a posted price as an EPA reference, to accept EPA based on changes in published prices. We, therefore, request your approval in accordance with DAR 3-404.3(c) and DLPR 3-404.3 to include in the solicitation use of an EPA Clause which permits price adjustments on this basis. The proposed clause (DFSC Clause* E14, copy enclosed) is a revision of the clause approved for EPA based on posted prices which was approved by DLA-PPR letter dated 2 April 1980 as amended by DLA-PPR letter dated 14 November 1980. We will continue to follow the guidance contained in your approval regarding validation and approval of EPA references.

* E19.14

DFSC-PCC
SUBJECT: Notification of a Change in Contracting Procedures - Economic Price Adjustment Basis

6. The East/Gulf Coast solicitation closed 3 December 1980. Delivery period starts 1 April 1981. In view of the fact that negotiations are scheduled to close 4 February 1981, the solicitation amendment should be issued no later than 27 January to allow adequate negotiation time without unduly delaying the purchase program. We, therefore, request that you forward any comments you may have by 26 January 1981.

FOR THE COMMANDER:

CLARENCE W. LEE
Colonel, USAF
Directorate of Contracting and Production

Prepared by: K. College/DFSC-PCC/22 Jan 81/pat

INTERNAL DISTRIBUTION:
DFSC-PCC Record Copy
DFSC-PCC Reading File
DFSC-PC Reading File
DFSC-P Reading File

14 ECONOMIC PRICE ADJUSTMENT (DFSC 1981JAN)

The Contractor respresents that the unit prices set forth in this contract do not include any [c]ingency allowance to cover the possibility of increases in the reference price(s) in the Contractor's bid or [pr]oposal.

PART A

As used throughout this provision:

(a) The term "listed items" means the items of Section E of the Schedule that are listed in the [Ref]erence Price Tabulation of Part C of this provision and are the only items to which price adjustment shall [app]ly, unless otherwise provided in the contract schedule.

(b) The term "base price" means the unit price set forth opposite the item in Section E of the [Sch]edule.

(c) The term "reference price" means the independent index set forth in this provision with which [the] base price is to fluctuate. The reference price should be a price for the same or similar product(s) as the [item] being purchased.

(d) The term "independent index" means an index measuring the general rate and direction of price [mov]ements for a commodity within a market which is beyond the control of the Contractor.

(e) The term "date of delivery" means

(i) the date and time vessel begins to load where contract calls for delivery at origin into [tan]ker or barge;

(ii) the date and time vessel begins to discharge where contract calls for delivery at [dest]ination by tanker or barge;

(iii) the date and time product commences to move past the specified f.o.b. point where [con]tract calls for delivery by pipeline;

(iv) the date product is received for all methods of delivery other than (i), (ii), and (iii) [abo]ve.

PART B

(a) The Contractor shall notify the Contracting Officer, Defense Fuel Supply Center, Cameron [Sta]tion, Alexandria, Va., 22314 of any change in the reference price by telegram dated (preferably confirmed [pro]mptly by letter), registered letter mailed, or unregistered letter received within fourteen (14) days from [the] date thereof.

(i) In the event the Contractor fails to notify the Contracting Officer of any increase in [re]ference price, such increase shall apply only to deliveries made on and after the date of receipt by the [Con]tracting Officer of a written notification from the Contractor of such increase.

(ii) In the event the Contractor fails to give notice of a decrease in the reference price, [su]ch decrease shall apply to all deliveries made on or subsequent to the date of such decrease.

(iii) An increase or decrease in any reference price published in a trade price service or in [c]ommercial journal shall apply only to deliveries made on and after the publication date of such trade price [ser]vice or commercial journal.

(iv) The Contracting Officer will issue a modification to this contract to reflect any change [pu]rsuant to this provision. However; no modification incorporating an increase in a contract unit price shall [b]e executed pursuant to this provision until the increase in the applicable published reference price has been [ve]rified by the Contracting Officer.

(b) Notwithstanding any provision of this clause to the contrary, the prices payable under this [co]ntract shall in no event exceed either

(i) the lower of Contractor's legal selling prices under Department of Energy mandatory [p]etroleum price regulation if applicable,

or

(ii) the maximum prices shown in Column VII of the Reference Price Tabulation.

E19 (Cont'd)

(c) The Contractor warrants that the prices to be invoiced hereunder for listed items shall be computed in accordance with these escalation provisions.

(d) In the event the reference price is an average of published prices, and any one price ceases to be published, the remaining prices shall be used to determine the average. In the event the reference price is published in a trade price service or commercial journal and such publication shall cease to publish said reference price or changes its method of quoting prices, this contract shall be amended effective on the date such publication ceases to publish or changes its method of quoting to (i) provide for a substitute reference price comparable to the one which the publication has ceased to publish or has changed its method of quoting, or (ii) conform to the new method of price quotations.

(e) Notwithstanding any other provision of this clause no upward adjustment shall apply to supplies which are required to be delivered prior to the effective date of the adjustment unless the Contractor's failure to deliver in accordance with the delivery schedule arises from causes beyond the control and without the fault or negligence of the Contractor within the meaning of the clause of this contract entitled "DEFAULT", in which case the contract shall be amended to make an equitable extension of the delivery schedule.

PART C

(a) The prices payable under this contract for listed items shall be the base price for the listed item increased or decreased by the amount, determined according to the formula in paragraph (b) below, that the reference price for the listed item shall have increased or decreased to and including the date of delivery.

(b) The amount of increase or decrease in the base price shall be
(Check appropriate box and complete applicable blanks)

[ ] the same number of cents, or fractions thereof, that the reference price increases or decreases per like unit of measure.

[ ] the number of cents, or fractions thereof, determined by the ratio of $_____ per gallon for each $___________ per barrel that the reference price increases or decreases.

[ ] the number of cents, or fractions thereof, at the rate $_____ per gallon of each full $_______ per barrel that the reference price increases or decreases.

(c) The reference price with which the base price for the listed item is to flutuate (and which is more fully defined in the tabulation to follow) is:

[ ] (1) The low price published in ______________________ (name of publication)

[ ] (2) The average of the prices published in ______________ (name of publication)

REFERENCE PRICE TABULATION

| I | II | III | IV | V | VI | VII |
|---|---|---|---|---|---|---|
| Item No. (listed items) | Name of publication (identify by No. Para (c) above) | Heading under which refererence price is published and name of product | Location where reference price is applicable | Method of delivery applicable to the reference price | Reference price as of ________ (date) (excludes all taxes) | Maximum price payable under this contract (includes any tax included in the base price)(See Clause E19,09) |

CONTRACT (Proc. Inst. Ident.) NO. DLA600-84-D-0521
UNDER DPSA REG. 2 AND/OR DMS ...
3. EFFECTIVE DATE: 84 OCT 18
PAGE 1 OF 10 PAGES
4. REQUISITION/PURCHASE REQUEST/PROJECT NO.: SC0600-85-0501

ISSUED BY — CODE SC0600
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION
ALEXANDRIA, VIRGINIA 22314
TWX 710-832-0600
BUYER/SYMBOL- J. SIMMS/DFSC-PD
PHONE- (202) 274-7453
2.2d

6. ADMINISTERED BY (If other than Item 5) — CODE
PAS - S4404A45023SC

NAME AND ADDRESS OF CONTRACTOR (No., street, city, county, State and ZIP Code)

Kern Oil & Refining Company
16800 Imperial Valley Drive, Suite 380
Houston, TX 77060

8. DELIVERY
☐ FOB ORIGIN ☒ OTHER (See belo

9. DISCOUNT FOR PROMPT PAYMENT
At Prevailing Treasury Rate fc
Net - 10 Days

10. SUBMIT INVOICES (4 copies unless otherwise specified) TO THE ADDRESS SHOWN IN: ITEM 12

FACILITY CODE

SHIP TO/MARK FOR — CODE
See Schedule

12. PAYMENT WILL BE MADE BY — CODE SA4900
Defense Fuel Supply Center
Cameron Station, Building 5, Attn: DFSC-CDX
Alexandria, Virginia 22314

13. THIS ACQUISITION WAS: (Check one box(es))
A. ADVERTISED
B. NEGOTIATED PURSUANT TO: ☒ 10 USC 2304(a)(10) ☐ 41 USC 252(c)( )

14. ACCOUNTING AND APPROPRIATION DATA
See Clause I150.11
97X4961.5106 01 26.10 S44203

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|

(a) This document confirms and incorporates by reference the wire Notice of Award dated 84 OCTOBER 18.

(b) A copy of Clause B12.01 (Contract Schedule) and various other clauses agreed t by the parties are attached. Solicitation RFP DLA600-84-R-0461 dated 84 Mar 19 and amendments 0001 through 0005 are incorporated by reference except for the follo ing clauses which are deleted: B25, I94, I97, I150, I171, I176, I176.01 and I176.03.

15G. TOTAL AMOUNT OF CONTRACT ▶ $10,093,935.[illegible]

16. TABLE OF CONTENTS

| (✓) | SEC. | DESCRIPTION | PAGE(S) | (✓) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I – THE SCHEDULE | | | | PART II – CONTRACT CLAUSES | |
| | A | SOLICITATION/CONTRACT FORM | | | I | CONTRACT CLAUSES | |
| | B | SUPPLIES OR SERVICES AND PRICES/COSTS | | | | PART III – LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| | C | DESCRIPTION/SPECS./WORK STATEMENT | | | J | LIST OF ATTACHMENTS | |
| | D | PACKAGING AND MARKING | | | | PART IV – REPRESENTATIONS AND INSTRUCTIONS | |
| | E | INSPECTION AND ACCEPTANCE | | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| | F | DELIVERIES OR PERFORMANCE | | | | | |
| | G | CONTRACT ADMINISTRATION DATA | | | L | INSTRS., CONDS., AND NOTICES TO OFFER | |
| | H | SPECIAL CONTRACT REQUIREMENTS | | | M | EVALUATION FACTORS FOR AWARD | |

**CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE**

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return 2 copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ AWARD (Contractor is not required to sign this document.) Your offer on Solicitation Number ________ including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

19A. NAME AND TITLE OF SIGNER (Type or print)
CHARLES C. BOUDREAUX
VICE PRESIDENT CHEMICAL SALES

20A. NAME OF CONTRACTING OFFICER
BARBARA C. HUGHES

19B. NAME OF CONTRACTOR
BY [signature]
(Signature of Person authorized to sign)

19C. DATE SIGNED
12/20/84

20B. UNITED STATES OF AMERICA
BY Barbara C Hughes
(Signature of Contracting Officer)

20C. DATE SIGNED
26 Dec 84

(a) The supplies to be furnished hereunder, FOB delivery points, methods of delivery and estimated quantities are as listed below.

(b) Prices indicated hereunder are subject to the economic price adjustment provisions of clause B19.22.

| ITEM | EST QTY/GALS | MOD | BASE UNIT | INTERIM BILLING PRICE |
|---|---|---|---|---|
| | DFSC | JP-5 | | NSN 9130-00-273-2379 |
| 0101 | 3,088,500 | TT | $.888800 W/FSII | $.888800 W/FSII |

FOB Destination delivery of 3,088,500 gallons at NWC China Lake, CA.

| | | | | |
|---|---|---|---|---|
| 0201 | 4,241,000 | TT | $.895700 W/FSII | $.895700 W/FSII |

FOB Destination delivery of 4,241,000 gallons to NAS PT Mugu, CA.

SMALL BUSINESS SET-ASIDE

| | | | | |
|---|---|---|---|---|
| 0301 | 425,000 | TT | $.886200 W/FSII | $.886200 W/FSII |

FOB Destination delivery of 425,000 gallons to Edwards AFB, CA.

SMALL BUSINESS SET-ASIDE

| | | | | |
|---|---|---|---|---|
| 0401 | 1,667,500 | TT | $.893753 W/FSII | $.893753 W/FSII |

FOB Destination delivery of 1,667,500 gallons to NAS Point Mugu, CA.

SMALL BUSINESS SET-ASIDE

| | | | | |
|---|---|---|---|---|
| 0501 | 1,918,000 | TT | $.877604 W/FSII | $.877604 W/FSII |

FOB Destination delivery of 1,918,000 gallons to NAS Lemoore,CA.

NOTES:

1. The amount included in price per gallon for line item(s) 0101, 0201, 0301, 0401 and 0501 for JP-5 ordered with Fuel System Icing Inhibitor (FSII) is .0042.

2. Unless the parties agree otherwise the minimum and maximum quantities available for individual deliveries shall be as follows:

| ITEM | SHIPPING POINT | MOD | MINIMUM | MAXIMUM |
|---|---|---|---|---|
| 0101, 0201 0301, 0401 and 0501 | Kern Oil & Refining Co. Panama Lane & Weedpath Hwy Bakersfield CA 93307 | TT | 8,400 gals | 46,200 gals. |

3. Reference Clause F1.08, Deliveries and Contract Period. The ordering period is Date of Award through 30 Sept 85. The delivery period is date of award through 30 Oct 85.

4. Notwithstanding award of this contract on 18 Oct 84, it is mutually agreed that pro-rata volumes of product due the Government shall be as stated in Clause F1.08. Any monthly pro-rata volumes for Oct 84 not deliverable in Oct 84 as a result of award on 18 Oct 84 will be deliverable at a time within the life of the contract which is mutually agreeable between the ordering officer and the contractor.

total quantity of 3,088,500 gallons in line item 0101 and 4,241,000 gallons in line 0201 represent quantities reserved for Small Business Set-Aside.