Defendant, on the other hand, contends that the phrase "established prices," is much more flexible, encompassing almost any agreed-upon price adjustment system, especially those that are published, like the PMM Index.[3]

However, as MAPCO points out, the meaning of "established prices" in FAR § 16.203-1(a) is clarified by the "Limitations" provision, § 16.203-3, which specifically refers to "contractor's established prices."[4] Because it is located in the same section, the language of § 16.203-3 plainly gives meaning to the phrase "established prices" used in § 16.203-1(a). This is made clearer by an examination of the history of § 16.203.

The FAR were the result of a project begun in 1978 to unify and simplify the federal procurement system. At that time, federal procurement was generally governed by two systems of regulations, the Defense Acquisition Regulations ("DAR") and the Armed Services Procurement Regulations

---

[3]In support of this claim, defendant cites Gale Barstow, Inc., 86-2 B.C.A. (CCH) ¶ 18,758 (ASBCA Jan. 24, 1986). In Gale Barstow, the Board considered an EPA clause in a DFSC contract for the supply of petroleum products. The escalator was an average of wholesale prices for petroleum products printed in the Lundberg Letter, a price summary presumably similar to the PMM. The contractor in that case did not challenge the legality of the EPA clause. It did, however, object to the use of the Lundberg Letter as the escalator, claiming that the Letter reflected the average of wholesalers' prices, rather than an "absolute" price. The Board rejected the appeal because the contractor failed to protest the choice of the escalator prior to the award of the contract. Gale Barstow, 86-2 B.C.A. at 94,450.

Although the Board in Gale Barstow ruled in the Government's favor, Barstow cannot be said to uphold the use of a price index for contract end items as an acceptable escalator for EPA clauses. The Board was not called upon to construe FAR § 16.203 as we are today, and the legality of the EPA clause was not questioned.

[4]FAR § 16.203-3 provides:

> A fixed-price contract with economic price adjustment shall not be used unless the contracting officer determines that it is necessary either to protect the contractor and the Government against significant fluctuations in labor or material costs or to provide for contract price adjustment in the event of changes in the contractor's established prices.

("ASPR"). Periodically between 1978 and September 19, 1983, when the Department of Defense ("DOD"), General Services Administration ("GSA") and NASA published a final draft of the FAR, see "Establishing the Federal Acquisition Regulation," 48 Fed. Reg. 42,102 (1983) (as codified at 48 C.F.R. §§ 1-99), the Office of Federal Procurement Policy ran a statement as to the purposes underlying the FAR:

> The fundamental purposes of the FAR are to reduce proliferation of regulations; to eliminate conflicts and redundancies; and to provide an acquisition regulation that is simple, clear and understandable. The intent is not to create new policy. However, because new policies may arise concurrently with the FAR project, the notice of availability of draft regulations will summarize the section or part available for review and describe any new policies therein.

See, e.g., "Types of Contracts," 46 Fed. Reg. 42,303 (1981) (emphasis added). No new policies were described in the portion of the draft summarizing FAR Part 16, which governs the present dispute. See id. at 42,304.

As MAPCO notes, FAR Subpart 16.2 and its forerunners in the DAR and ASPR reveal that Subpart 16.2 is largely a reproduction of DAR § 3.404, except that the original order of the DAR sections that now comprise § 16.203 were altered in promulgating the FAR. The provision that became FAR § 16.203-1, listing the three general types of EPA clauses, was derived from DAR § 3-404.3(b). The "Limitations" provision, FAR § 16.203-3, was derived from DAR § 3-404.3(a).[3] Thus, while no substantive effect was intended, the order of those two provisions was reversed in the transition from

---

[3] DAR § 3-404.3 was essentially equivalent to the "Limitations" provision in the FAR. DAR § 3-404.3 provided:

> (a) General. The fixed price contract with economic price adjustment may be used . . . when the contracting officer determines that price adjustment provisions are necessary either to protect the contractor and the Government against significant economic fluctuations in labor or material costs or to provide for contract price adjustment in the event of changes in the contractor's established prices.

the DAR to the FAR. In the DAR, the provision that came first expressly referred to the need to make any adjustments because of fluctuations in the <u>contractor's</u> established prices. Next, the DAR listed the three allowable types of EPA clauses. The word "contractor's" could then be omitted from the subsequent term "Adjustments based on established prices," and the term would still convey same meaning.[6] For defendant's argument to succeed, the court would have to assume that the compilers intended to alter the meaning of the phrase "established prices" by reversing the order of the subparagraphs. This we decline to do, in light of the limited mandate of the FAR committee.

Other portions of the regulations also indicate that the phrase "established prices" refers to the contractor's established prices. The standard EPA clauses for "Adjustments based on established prices" authorized under § 16.203-4 are set out in FAR § 52.216-2 and § 52.216-3. These standard clauses base adjustments to contract price on fluctuations in the contractor's established prices. For example, the standard EPA clause set out at § 52.216-2 provides, in part:

> (a) The Contractor warrants that the unit price stated in the Schedule for _________ [*offeror insert Schedule line item number*] is not in excess of the <u>Contractor's applicable established price</u> in effect on the contract date for like quantities of the same item. . . . The term "established price" means a price that (1) is an established catalog or market price for a commercial item sold in substantial quantities to the general public, (2) meets the criteria of subsection 15.804-3 of the Federal Acquisition Regulation (FAR), and (3) is the net price after applying any standard trade discounts offered by the Contractor.

FAR § 52.216-2 ("Economic Price Adjustment - Standard Supplies") (emphasis added). References to the contractor's established price also occur

---

[6]In support of its position, MAPCO offers the recent declarations of Etha Quinn, Lawrence Rizzi and Hugh Witt, who each had varying responsibilities in the drafting and publishing of the FAR. However, post hoc statements by drafting officials as to the administrative history and underlying intent of federal regulations hold no probative value, especially when uttered "in the context of a vigorous dispute." <u>Honeywell, Inc. v. United States</u>, 228 Ct. Cl. 591, 595, 661 F.2d 182 (1981). In any event, these statements [illegible] unnecessary for the court to reach the conclusion that the phrase [illegible] 319.33 [illegible]

in §§ 52.216-2(b), 52.216-2(c), 52.216-3(a), 52.216-3(b), and 52.216-3(c). In these clauses, the terms "contractor's established price" and "established price" are used interchangeably. No standard clause exists to support defendant's conclusion. Each standard EPA clause reflects the mandates of the § 16.203-3 "Limitations" provision. See 48 C.F.R. § 52.216-2 to -4. While it is not necessary that the "agency-prescribed" clauses available to DFSC mirror precisely the verbiage in § 16.203-3, "agency-prescribed" EPA clauses must reflect the concepts underlying that regulation.

Moreover, the PMM Index could hardly be described as reflecting "established prices." Although defendant argues that the PMM Index constitutes an "established catalog or market price" because it is a published summary of prices on the open market, the meaning of "catalog or market price" in the FAR, as clarified by § 15.804-3, does not support defendant's interpretation.

Regarding catalog prices, § 15.804-3 provides as follows:

> "Established catalog prices" must be recorded in a form regularly maintained by the manufacturer or vendor. This form may be a catalog, price list, schedule, or other verifiable and established record. The record must (i) be published or otherwise available for customer inspection and (ii) state current or last sales price to a significant number of buyers constituting the general public.

48 C.F.R. § 15.804-3(c)(1) (citations omitted). The EPA clauses in question are not based on catalog prices because the PMM Index is not a catalog, nor does it reflect an "established catalog price." It is not maintained by MAPCO, nor does it state MAPCO's prices to buyers in the general public.

Regarding market prices, § 15.804-3 provides as follows:

> "Established market prices" are current prices that (i) are established in the course of ordinary and usual trade between buyers and sellers free to bargain and (ii) can be substantiated by data from sources independent of the manufacturer or vendor.

48 C.F.R. § 15.804-3(c)(2). The two EPA clauses in this case are not based on market prices because the PMM Index does not reflect an "established market price." The index is an amalgamation of the [illegible] market's

petroleum sales data. It is not, as § 15.804-3(c)(2) contemplates, determinative of any particular corporation's current prices.

The first two meanings Webster's provides for the term "establish" are "to make stable; make firm; settle" and "to order, ordain, or enact (a law, statute, etc.) permanently." WEBSTER'S NEW WORLD DICTIONARY 465 (3d college ed. 1988). For a price to be "established" therefore, a purchaser would have to have assurance that he could go to a particular vendor and insist on the advertised price. An average of month-old sales in no sense creates an established price. The index itself does not reflect any specific vendor's current price. In sum, the index at issue is neither the contractor's, nor does it reflect an established price.

Defendant's contention that the PMM Index constitutes an "established price" is further diminished by the language in § 16.203-1 describing the three types of permissible EPA clauses. The regulations allow for EPA clauses to be based on "established prices," "actual costs of labor or material," or "cost indexes of labor or material." Although § 16.203-1(c) refers to the use of an index, § 16.203-1(a) does not. "Where particular language is used in one section [of the regulations] but not another, the term or its equivalent should not be implied where it is excluded." United States v. Heller, 635 F.2d 848, 855 n.12 (Temp. Emer. Ct. App. 1980) (citing FTC v. Sun Oil Co., 371 U.S. 505, 514 (1963); M. Kraus & Bros., Inc. v. United States, 327 U.S. 614, 625-26 (1946); Bott v. American Hydrocarbon Corp., 458 F.2d 229, 233 (5th Cir. 1972)), on remand, United States v. Heller, 542 F. Supp. 157 (D.C. Mass. 1982), vacated on other grounds, United States v. Heller, 726 F.2d 756 (Temp. Emer. Ct. App. 1983). Because the regulations specifically use the term "index" in the section on cost indexes, we cannot imply the term "index" in the term "established prices."

Defendant's second argument that the PMM Index is a valid escalator fitting within the descriptions of FAR § 16.203-1 is that it constitutes a cost index within the meaning of § 16.203-1(c),[3] "Adjustments based on cost indexes of labor or material." The Government states:

> Contract clauses based upon indexes very similar to the PMM have routinely been sustained. See, e.g., Glopak Corp. v. United States, 851 F.2d [334,] 336 [(Fed. Cir. 1988)] (Producer's Price Index [("PPI")] for polyethylene resin

---

[3] [illegible]