MEMORANDUM FOR THE DIRECTOR, DAR COUNCIL

## I. PROBLEM:

By letters dated 8 January 1992 and 1 May 1992, the Director of Defense Procurement approved the Defense Fuel Supply Center's (DFSC) economic price adjustment (EPA) clauses as part of the regulatory relief task force review. These clauses, or variations, are in effect today. DFSC wishes to revise the clause used in its domestic bulk fuels programs. The current system of price adjustment for those programs requires all offerors to accept a method of price adjustment based on actual monthly sales price averages published by the Department of Energy in the *Petroleum Marketing Monthly* (PMM). Because the PMM data is not published until the third month following the month for which data is effective, interim adjustments are made based on the movement of an interim escalator. The interim escalator is based on prices published in trade journals at the end of the month prior to delivery. Final adjustments in the billings are made according to differences between the interim and PMM (final) escalators when the PMM is published. When market prices vary greatly from month to month, the final billing adjustments can be substantial. Although this method has proved to be a reliable means of price adjustment, it has several disadvantages. First, it requires double calculations of price adjustments. Second, because of the time lag between interim and final billing, contractors likely build in a price cushion. Finally, the process is overly complicated.

## II. RECOMMENDATION:

A class deviation, lasting longer than three years, should be incorporated into the DLAR. The appropriate coverage in DLAR at 16.203-4 (90) should include a new paragraph which states:

" *(b) Notwithstanding any provision in FAR 16.203-1, 16.203-2, 16.203-3, 16.203-4 or this DLAR, DLA supply centers are authorized to use industry market prices for EPA purposes. The industry market price may be derived from sales prices in the market place, quotes, or assessments for one or several items or commodity groups as reported or made available in a consistent manner in a publication, electronic data base, or other form, by an independent trade association, Governmental body, or other third party independent of the contractor. Industry market prices for more than one item may be combined in a formula for economic price adjustment purposes when deemed appropriate by the contracting officer in the absence of an appropriate single price.*

## III. DISCUSSION:

A. Prior to FARS DEV 94-24, DFSC's current system of price adjustment for bulk petroleum had been used since 1987. All offerors of product to DFSC were required to accept a method of price adjustment based on actual monthly sales price averages as published by the Department of Energy in the PMM. Because the PMM data is not published until the third month following the month for which data is effective, interim billings are paid based on the movement of an interim

escalator. The interim escalator is based on prices published in trade journals at the end of the month prior to delivery. Final adjustments in the billings are made according to differences between the interim and PMM (final) escalators when the PMM is published. When market prices vary greatly from month to month, the final billing adjustments can be substantial. In 1992, the Defense Management Review, as part of a review of all agency clauses, approved the use of the PMM-based EPA clauses. Our authority to use the PMM was reconfirmed by the Director of Defense Procurement in 1993.

B. The revised bulk fuels clause substitutes industry publications, a more current EPA basis, for the prior PMM methodology. This provides a number of advantages. First, it eliminates the need for double calculations of price adjustments, a significant savings to the government. Second, because of the time lag between interim and final billing, contractors likely build in a price cushion. It is probable that the Government would save money with contractors no longer having to include a cushion to cover them for price adjustments. Third, the new EPA method is more similar to the way adjustments are done commercially in that commercial publications are widely accepted by industry. Finally, the new method will be much simpler for all parties to use. The DFSC Office of Market Research and Analysis has studied the proposed EPA provisions and found them to be reliable bases for price adjustments. The publications are already used for EPA purposes in other DFSC programs.

C. DFSC has used the industry market price concept since the early 1980's and has found it to be a reliable method of price adjustment. It is unnecessary to review the deviation every three years as with most class deviations. Therefore, we request that the deviation be made permanent and be included in the DLAR.

D. Additional DFARS 201.402(3) Requirements.

1. This class deviation request has been reviewed and approved by the DFSC Office of Counsel.

2. This class deviation corresponds most closely with the deviation definition of FAR 1.401(c).

3. This is the first request for this class deviation to be published in the DLAR.

IV. COLLATERALS:

A. In accordance with FAR 1.301(b) and Subpart 1.5 and as required by section 22 of the Office of Federal Procurement Policy Act, DLA intends to have this revised DLAR language published for public comment, because the coverage will have a significant effect beyond the internal operating procedures of DLA and may have a modest impact on contractors and offerors.

B. The proposed class deviation and DLAR coverage do not impose any paperwork burdens or informal collection requirements. Thus the Paperwork Reduction Act does not apply.

C. The proposed class deviation and DLAR coverage is not expected to have a significant impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq.* since the elimination of interim billing will greatly simplify administrative procedures required of contractors. A regulatory flexibility analysis, therefore, is not required.

Enclosures Tab 1- DLAR coverage
Tab 2- FAR DEV 94-24
Tab 3- DFSC Clause B19.33

PART 16

TYPES OF CONTRACTS

SUBPART 16.2 - FIXED PRICE CONTRACTS

**16.203 Fixed-price contracts with economic price adjustment.**

**16.203-3 Limitations.**

no changes to text

**16.203-4 Contract clauses**

(90) *(a)* Adjustments based on established prices.

no changes to text

*(b) Not withstanding any provision in FAR 16.203-1, 16.203-2, 16.203-3, 16.203-4 or this DLAR, DLA supply centers are authorized to use industry market prices for EPA purposes. The industry market price may be derived from sales prices in the market place, quotes, or assessments for one or several items or commodity groups as reported or made available in a consistent manner in a publication, electronic data base, or other form, by an independent trade association, Governmental body, or other third party independent of the contractor. Industry market prices for more than one item may be combined in a formula for economic price adjustment purposes when deemed appropriate by the contracting officer in the absence of an appropriate single price.*

(Italics indicate added language)

FEDERAL REGISTER

Vol. 60, No. 39

Proposed Rules

DEPARTMENT OF DEFENSE (DOD)

Defense Logistics Agency (DLA)

48 CFR Part 5416

**DLA Acquisition Regulation; Type of Contracts**

*60 FR 10826*

DATE: Tuesday, February 28, 1995

ACTION: Proposed rule and request for comments.

[*10826]

SUMMARY: The Defense Logistics Agency proposes to add coverage by adding a new part to 48 CFR Chapter 54, the Defense Logistics Acquisition Regulation (DLAR) Part 5416. The proposed coverage affects regulations on the use of solicitation provisions and contract clauses for Economic Price Adjustments (EPA). Comments are hereby requested on the proposed rule. The proposed DLAR coverage expands [*10827] the use of EPA based on established prices to encompass industry-wide and geographically based market price references, expands the use of EPA based on indexes to encompass indexes for commercial products or services which are identical or similar to the end products to be provided under the contract, and authorizes the development and use, subject to established agency review and approval procedures, of clauses using EPA references described above. The proposed coverage is being published because it is expected to have an effect beyond the internal operating procedures of DLA and to provide an opportunity for public participation and comment.

DATES: Comments on the proposed DLAR rule must be submitted in writing to the address shown below on or before May 1, 1995, to be considered in the formulation of the final rules.

ADDRESSES: Interested parties should submit written comments to Defense Logistics Agency, Directorate of Procurement, Contract Policy Team (AQPLL), Ms. Melody Reardon, Cameron Station, Alexandria, Virginia 22304-6100 FAX: (703) 274-0310.

FOR FURTHER INFORMATION CONTACT:

Melody Reardon, Defense Logistics Agency, AQPLL, (703) 274-6431.

**SUPPLEMENTARY INFORMATION:**

**A. Background**

The Defense Fuel Supply Center, a major contracting activity of DLA, has historically utilized a method of price adjustment in the bulk petroleum area using price indexes for the same or similar end products (most recently, actual monthly sales price averages published by the Department of Energy in the Petroleum Marketing Monthly) and using market price assessments for commercial products published in industry trade journals. For the past few years, these EPA clauses have either been approved by the Director, Defense Procurement, or authorized under individual deviations granted by the Executive Director, Procurement, DLA. Deviations were requested because the types of EPA references used in these clause are not specifically recognized under the three general types of EPA references at FAR 16.203. Currently, FAR 16.203-1(a) and its related coverage and clauses, recognize EPA references based on established market or catalog prices of the individual contractor only. The proposed DLAR coverage will expand this to include industry-wide and geographically specific market price assessments and authorize the development and use of clauses on that basis. FAR 16.203-1(c) and its related coverage recognize EPA references based only on indexes for labor or materials. The proposed DLAR coverage would expand this to include indexes for the same or similar commercial end products and authorize the development and use of clauses on that basis.

None of the three EPA types currently encompassed by the FAR are appropriate for many of the competitive procurements of commercial products undertaken by DFSC and other DLA contracting offices. The use of an EPA reference based on an individual contractor's established price or cost of materials is impractical for procurements under which indefinite quantity contracts will be issued. Unique EPA references for each offeror engender relative price variations during the delivery period, making it impossible to determine the most favorable offer at time of award. This creates a significant price risk for the Government and undermines the competitive process. Use of an index based on raw material cost ignores the effect of market conditions which affect producer margins. This creates a price risk for the Government in periods where margins are contracting and for the contractors in periods where the margins are expanding. Such fluctuations can be significant in petroleum markets. Given the need for a common EPA reference, a reference that more closely follows market prices for the end item reduces price risk for both the Government and the contractor. Such references are also more in conformance with commercial practice.

**B. Regulatory Flexibility Act**

The proposed change is not expected to have significant economic impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, *5 U.S.C. 601 et seq*. The primary user of the new DLAR coverage will be the Defense Fuel Supply Center, which has been utilizing these types of EPA references since the early 1980s. The proposed rule will therefore not represent a change for small entities doing business with the DFSC. Flexibility is also limited by the need to establish a common EPA reference for competing offerors, as discussed above. Given this need, establishing the reference based

on the same or similar end products as being provided under the contract, as opposed to labor or material costs, minimizes the price risk experienced by small entities. An initial regulatory flexibility analysis has not been performed. Comments are invited from small businesses and other interested parties. Comments will also be considered concerning the effect of the proposed rule on small entities in accordance with section 612 of the Act. Such comments must be submitted separately and cite this case in correspondence.

**C. Paperwork Reduction Act**

The proposed rules do not impose any reporting or record keeping requirements which require the approval of OMB under *44 U.S.C. 3501, et seq*.

**List of Subjects in 48 CFR Part 5416**

Government procurement.

Therefore, it is proposed that 48 CFR Chapter 54, as proposed in the **Federal Register** *(59 FR 21954*, April 28, 1994) be amended by adding part 5416 to read as follows:

**PART 5416--TYPES OF CONTRACTS**

**Subpart 5416.2--Fixed Price Contracts**

5416.203 Fixed-Price Contracts with Economic Price Adjustment

5416.203-1 Description

5416.203-3 Limitations

5416.203-4 Contract Clauses

**Authority:** *5 U.S.C. 301, 10 U.S.C. 2202,* 48 CFR Part 1, subpart 1.3 and 48 CFR Part 201, subpart 201.3.

**Subpart 5416.2--Fixed Price Contracts**

**5416.203 -- Fixed Price Contracts with Economic Price Adjustment**

**5416.203-1 -- Description.**

(a)(S-90) *Adjustments based on established prices.* Established prices may reflect industry-wide and/or geographically based market price fluctuations for commodity groups, specific supplies or services, or contract end items.

(c)(S-90) *Adjustments based on cost indexes of labor or materials.* These price adjustments may also be based on increases or decreases in indexes for commodity groups specific supplies or services, or contract end items.

**5416.203-3 -- Limitations.**

(S-90) A fixed price contract with economic price adjustment may also be used to provide for price adjustments authorized in this section.

**5416.203-4 -- Contract clauses.**

(S-90) When the contracting officer determines that an existing EPA clause is not appropriate, the contracting officer may develop and use another EPA clause in accordance with 5416.203-1 (a)(S-90) or (c)(S-90). Established prices in such clauses need not be verifiable using the criteria in 48 CFR (FAR) 15.804-3. Established prices [*10828] and cost indexes need not reflect changes in the costs or established prices of a specific contractor. The established price or cost index may be derived from sales prices in the marketplace, quotes, or assessments as reported or made available in a consistent manner in a publication, electronic database, or other form, by an independent trade association, Governmental body, or other third party independent of the contractor. More than one established price or cost index may be combined in a formula for economic price adjustment purposes in the absence of an appropriate single price or cost index.

Dated: February 15, 1995.

Margaret J. Janes,

*Assistant Executive Director (Procurement Policy).*

[FR Doc. 95-4574 Filed 2-27-95; 8:45 am]

EXECUTIVE CORRESPONDENCE

# NATIONAL SECURITY INDUSTRIAL ASSOCIATION

National Headquarters

1025 Connecticut Ave, N.W.
Suite 300
Washington, D.C. 20036
Telephone: (202) 775-1440
FAX: (202) 775-1309

51 Years of Service

Leonard P. Gollobin
Chairman,
Board of Trustees

J. R. Woodhull
Vice Chairman,
Board of Trustees
Chairman,
Executive Committee

Arthur E. Johnson
Vice Chairman,
Executive Committee

James R. Hogg
President

1 May 1995

Defense Logistics Agency
Directorate of Procurement
Contract Policy Team (AQPLL)
Ms. Melody Reardon
Cameron Station
Alexandria, VA 22304-6100

Dear Ms. Reardon:

The National Security Industrial Association (NSIA) is pleased to comment on the proposed rule to add coverage by adding a new part to 48 CFR Chapter 54, the Defense Logistics Acquisition Regulation (DLAR) Part 5416.

As the Court of Federal Claims stated in MAPCO Alaska Petroleum, Inc. v. United States, 27 Fed. Cl. 405, 413 (1992), the purpose of an EPA clause "is to divide the risk of economic uncertainty between the parties." We are concerned that the proposed rules, 5416.203 et seq., err in shifting too much of that risk from the federal government to the contractor. The current regulations, as interpreted by the court in MAPCO, ensure that each EPA reference reflects a price that is actually available to the contractor.

Under the proposed regulation, however, it is possible that an EPA price reference could, during the course of performance, cease to represent prices that are actually available to the contractor by continue to reflect prices available in "assessments as reported or made available in a consistent manner in a publication, electronic database, or other form by an independent trade association, Governmental body, or other third party independent of the contractor" within the meaning of proposed rule 5416.203-4. Such a situation could unfairly shift the risk of price uncertainty to the contractor.

We agree with the suggestion contained in the Supplementary Information that "a reference that more closely follows market prices for the end item reduces price risk for both the Government and the contractor." Our concern is that the proposed regulation could, in certain circumstances, permit a contracting officer to select (or retain) an EPA reference that does not follow market prices.