If you would like further information on this issue, please contact Ed Schiff, Director for Procurement, NSIA, at (202)775-1303.

Sincerely,

James R. Hogg
President

DEFENSE LOGISTICS AGENCY
DEFENSE FUEL SUPPLY CENTER
CAMERON STATION
ALEXANDRIA, VIRGINIA 22304-6160

12 MAY 1995

IN REPLY REFER TO DFSC-PPR

SUBJECT: Request for Class Deviation and Permanent Coverage in DLAR

TO: AQPLL

1. As you requested, enclosed is a revised Memorandum for the Director of the DAR Council which addresses the one public comment received in response to the Economic Price Adjustment coverage published in the 28 February 1995 edition of the Federal Register.

2. We appreciate your prompt attention to this request. The point of contact for this office is Kerry Pilz, extension 45500, for any questions you may have.

Original Signed By

L. H. CARPENTER
Captain, SC, USN
Director, Contracting
and Production

Encl

MEMORANDUM FOR THE DIRECTOR OF THE DAR COUNCIL

I. PROBLEM:

By letters dated 8 January 1992 and 1 May 1992, the Director of Defense Procurement approved the Defense Fuel Supply Center's (DFSC) economic price adjustment (EPA) clauses as part of the regulatory relief task force review. These clauses, or variations, are in effect today. DFSC wishes to revise the clause used in its domestic bulk fuels programs. None of the three economic price adjustment types currently encompassed by the FAR are appropriate for many of the competitive procurements of commercial products undertaken by DFSC and other DLA contracting offices. The use of an EPA reference based on an individual contractor's established price or cost of materials is impractical for procurements under which indefinite quantity contracts will be issued. Unique EPA references for each offeror engender relative price variations during the delivery period, making it impossible to determine the most favorable offer at time of award. This creates a significant price risk for the Government and undermines the competitive process. Given the need for a common EPA reference, a reference that more closely follows market prices for the end item reduces price risk for both the Government and the contractor. Such references are also more in conformance with commercial practice.

II. RECOMMENDATION:

A class deviation, lasting longer than three years, should be incorporated into the DLAR. This deviation expands the use of EPAs based on established prices to encompass industry-wide and geographically based market price references and expands the use of EPAs based on indexes to encompass indexes for commercial products or services which are identical to or similar to the end products to be provided under the contract. The appropriate coverage in DLAR at 16.203 should read:

*16.203-1 Description*

*(a)(90) Adjustment based on established prices. Established prices may reflect industry-wide and/or geographically based market price fluctuations for commodity groups, specific supplies or services, or contract end items.*

*(c)(90) Adjustments based on cost indexes of labor or material. These price adjustments may also be based on increases or decreases in indexes for commodity groups, specific supplies or services, or contract end items.*

*16.203-3 Limitations*

*(90) A fixed price contract with economic price adjustment may also be used to provide for price adjustments authorized in this section.*

*16.204-4 Contract clauses.*

*(90) When the contracting officer determines that an existing EPA clause is not appropriate, the contracting officer may develop and use another EPA clause in accordance with 16.203-1(a)(90) or (c)(90). Established prices in such clauses need not be verifiable using the criteria in 48 CFR (FAR) 15.804-3. Established prices and cost indexes need not reflect changes in the costs or established prices of a specific contractor. The established price or cost index may be derived from sales prices in the marketplace, quotes, or assessments as reported or made available in a consistent manner in a publication, electronic database, or other form, by an independent trade association, Governmental body, or other third party independent of the contractor. More than one established price or cost index may be combined in a formula for economic price adjustment purposes in the absence of an appropriate single price or cost index.*

III. DISCUSSION:

A. Prior to FARS DEV 94-24, DFSC's current system of price adjustment for bulk petroleum had been used since 1987. All offerors of product to DFSC were required to accept a method of price adjustment based on actual monthly sales price averages as published by the Department of Energy in the *Petroleum Marketing Monthly* (PMM). Because the PMM data is not published until the third month following the month for which data is effective, interim billings are paid based on the movement of an interim escalator. The interim escalator is based on prices published in trade journals at the end of the month prior to delivery. Final adjustments in the billings are made according to differences between the interim and PMM (final) escalators when the PMM is published. When market prices vary greatly from month to month, the final billing adjustments can be substantial. In 1992, the Defense Management Review, as part of a review of all agency clauses, approved the use of the PMM-based EPA clauses. Our authority to use the PMM was reconfirmed by the Director of Defense Procurement in 1993.

B. The revised bulk fuels clause substitutes industry publications, a more current EPA basis, for the prior PMM methodology. This provides a number of advantages. First, it eliminates the need for double calculations of price adjustments, a significant savings to the government. Second, because of the time lag between interim and final billing, contractors likely build in a price cushion. It is probable that the Government would save money with contractors no longer having to include a cushion to cover them for price adjustments. Third, the new EPA method is more similar to the way adjustments are done commercially in that commercial publications are widely accepted by industry. Finally, the new method will be much simpler for all parties to use. The DFSC Office of Market Research and Analysis has studied the proposed EPA provisions and found them to be reliable bases for price adjustments. The publications are already used for EPA purposes in other DFSC programs.

C. DFSC has used the industry market price concept since the early 1980's and has found it to be a reliable method of price adjustment. It is unnecessary to review the deviation every three years as with most class deviations. Therefore, we request that the deviation be made permanent and be included in the DLAR.

D. Additional DFARS 201.402(3) Requirements.

1. This class deviation request has been reviewed and approved by the DFSC Office of Counsel.

2. This class deviation corresponds most closely with the deviation definition of FAR 1.401(c).

3. This is the first request for this class deviation to be published in the DLAR.

4. This class deviation was published in the Federal Register on 28 February 1995. It offered the public 60 days in which to comment on the proposed DLAR language. One public comment was received on 2 May 1995, after the expiration of the public comment period. DFSC, however, addresses the letter received from The National Security Industrial Association as follows.

The National Security Industrial Association is concerned that the EPA references chosen by the contracting officer might not reflect actual market prices and therefore, the price available to the contractor. They stated, "Such a situation could unfairly shift the risk of price uncertainty to the contractor."

DFSC responds that the commentor seems concerned about implementing the market price concept, not the concept itself. Because DFSC sucessfully used the market price EPA concept since the early 1980's, we do not believe that any concern is warranted. None of DFSC's contractors have filed comments regarding the proposal. In any event, DFSC's EPA clauses contain provisions for revising market price indicators, if the contracting officer finds a reference has been discontinued, or if it substantially and consistently fails to reflect market conditions. If these conditions occur, the parties may agree upon an appropriate substitute for the inadequate indicator. If the parties fail to reach agreement, the supplier can utilize the provisions contained in the DISPUTES clause of the contract. DFSC makes every effort to utilize market price indicators that consistently reflect actual market conditions. The National Security Industrial Association recognizes the benefit of such behavior by agreeing in its letter with the Government's statement in the Federal Register: "a reference that more closely follows market prices for the end item reduces price risk for both the Government and the contractor." Accordingly, the comment does not warrant revising the proposed DLAR coverage.

IV. COLLATERALS:

A. The proposed class deviation and DLAR coverage do not impose any paperwork burdens or informal collection requirements. Thus the Paperwork Reduction Act does not apply.

B. The proposed class deviation and DLAR coverage is not expected to have a significant impact on a substantial number of small entities within the meaning of the Regulatory Flexibility Act, 5 U.S.C. 601 *et seq*. since the elimination of interim billing will greatly simplify

**administrative procedures required of contractors. A regulatory flexibility analysis, therefore, is not required.**

0099

DFSC-PPR

DFSC-PD
DFSC-P

SUBJECT: Request an Individual Deviation to FAR 16.203-1 for Approval of New Method of Economic Price Adjustment (EPA) 22 FEB 1995

TO: AQPLL

1. We request an individual deviation to FAR 16.203-1 for approval of a proposed EPA clause to cover solicitation SPO600-95-R-0161 which will be issued in March.

2. On 4 Jan 95 we requested a class deviation and permanent coverage in DLAR in order to use clause B19.33. Subsequent conversations between our office and Jerry Gilbart resulted in substantially revised proposed DLAR coverage. The initial package with the revised DLAR coverage is enclosed as back up. Until the 4 Jan 95 request is approved, an individual deviation is required to provide product for our large Inland & West Coast bulk procurement.

3. We appreciate your prompt attention to this request. The point of contact for this office is Dennis Stanley, extension 45500, for any questions you may have.

Encl

Original Signed By
Deputy Director
L. H. CARPENTER
Captain, SC, USN
Director, Contracting
and Production

Prepared By: CBriggs/PP/45500/22 Feb 95
Internal Dist. DFSC-PPR Record
DFSC-PPR Read
DFSC-PP Read
DFSC Read