DEFENSE LOGISTICS AGENCY
HEADQUARTERS
CAMERON STATION
ALEXANDRIA, VIRGINIA 22304-6100

IN REPLY REFER TO AQPLL
FARS DEV 95-03

02 MAR 1995

SUBJECT: Individual Deviation to FAR 16.203-1 for Use of Revised Version (November 1994) of Clause B19.33, ECONOMIC PRICE ADJUSTMENT - PUBLISHED MARKET PRICE (DOMESTIC BULK)

TO: DFSC-P

1. Your letter of 22 February 1995 requested a one-time deviation for an EPA clause providing for adjustments based upon market price summaries or averages of petroleum products reported by publishers independent of the offerors.

2. The clause is similar to, and intended to replace, clause B19.33, ECONOMIC PRICE ADJUSTMENT - PUBLISHED MARKET PRICE (DOMESTIC BULK) (DFSC NOV 1992). Clause B19.33 includes an interim market price-based EPA adjustment with provision for a further adjustment upon availability of market prices reported in a Department of Energy publication covering the reporting period. The proposed clause eliminated the need for the further retroactive adjustment, but otherwise, is substantially the same as the prior version of clause B19.33.

3. A deviation is hereby granted to permit the use of the revised EPA clause in all contracts awarded under current DFSC solicitation SP0600-95-R-0161.

4. FARS DEV 95-03 applies.

FOR THE DIRECTOR:

BARRY S. WILSON
Colonel, USAF
Acting Executive Director
(Procurement)

00 80 S661 ЯVW 9-

RECEIVED DFSC-PP

**CERTIFIED CLAIM OF**

**KERN OIL & REFINING COMPANY**

**SUBMITTED PURSUANT TO**

**THE CONTRACT DISPUTES ACT OF 1978**

**CONTRACT NO. SPO600-95-D-0507**

Kern Oil & Refining Company
7724 Panama Lane
Bakersfield, California 93307

# TABLE OF CONTENTS

**Page No.**


I. INTRODUCTION ..... 1

II. DFSC'S PRICE ADJUSTMENT CLAUSE WAS ILLEGAL ..... 2

III. KERN IS ENTITLED TO BE PAID THE FAIR MARKET VALUE OF THE FUEL IT SUPPLIED ..... 6

- A. ILLEGALITY ..... 6
- B. MISREPRESENTATION ..... 9
- C. BREACH OF CONTRACT ..... 10
- D. FAILURE OF CONSIDERATION ..... 11
- E. MUTUAL MISTAKE ..... 12
- F. FIFTH AMENDMENT TAKING ..... 14

IV. KERN IS ENTITLED TO RECOVER $446,728.79 ..... 18

- A. CLAIM METHODOLOGY ..... 19
- B. DFSC'S RIGHT TO OFFSET ..... 21
- C. CLAIM CALCULATION ..... 23

V. CONCLUSION ..... 25

APPENDIX

Contract No. SPO600-95-D-0507 — Ex. 1

Fair Market Value of JP-5 — Ex. 2

Total Payments for JP-5 — Ex. 3

Certification — Ex. 4

**CERTIFIED CLAIM OF KERN OIL & REFINING COMPANY**

Pursuant to the Contract Disputes Act ("CDA"), Kern Oil & Refining Company ("Kern") hereby submits its certified claim in the amount of $446,728.79 under Contract No. SPO600-95-D-0507 between Kern and the Defense Fuel Supply Center ("DFSC"). Kern requests a final decision on its claim within sixty days.

## I. INTRODUCTION

Kern and DFSC[1] entered into Contract No. SPO600-95-D-0507 ("the Contract") on August 29, 1995. (Ex. 1 at 1.) The Contract provided for Kern to deliver JP-5 at Bakersfield, California. (Ex. 1 at 2.) The Contract established initial prices for delivery of fuel and provided that these prices could be adjusted during the contract period under DFSC's economic price adjustment clause. (Ex. 1 at 3.)

DFSC's price adjustment clause, designated "Clause B19.33," permitted the prices Kern received for fuel to be adjusted by as much as sixty percent of the original contract price. (Ex. 1 at 3.) Price adjustments were made weekly based on changes in indexes of sales of petroleum products published in the *Platts Oilgram Price Report* (hereafter "*Platts*"). (Ex. 1 at 4.) DFSC maintained that use of its price adjustment clause was nonnegotiable.

[1] DFSC subsequently was renamed the Defense Energy Support Center ("DESC"). For simplicity, the designation "DFSC" is used throughout.

## II. DFSC'S PRICE ADJUSTMENT CLAUSE WAS ILLEGAL

In *Barrett Refining Corp. v. United States*, 242 F.3d 1055 (Fed. Cir. 2001), the United States Court of Appeals for the Federal Circuit found that DFSC's "standard price adjustment clause . . . was unenforceable because it failed to comply with the Federal Acquisition Regulations." *Id.* at 1058. In holding DFSC's price adjustment clause to be "unauthorized and unenforceable," the Federal Circuit adopted the rationale in *MAPCO Alaska Petroleum, Inc. v. United States*, 27 Fed. Cl. 405 (1992), where the United States Court of Federal Claims first held DFSC's price adjustment clause to be illegal. *Id.* at 1058, 1060 & n.2.

In *MAPCO*, the supplier had a one-year contract with DFSC to deliver JP-4, DFA, and MUR. 27 Fed. Cl. at 406. The contract contained DFSC's price adjustment clause B19.33, the same clause used in Kern's contract, which provided for fuel prices to be adjusted based on changes in specified PMM indexes. *Id.* During the contract, the price adjustment clause reduced fuel prices by thirty-five percent, while crude oil prices rose by ninety-five percent. *Id.* at 407. The supplier sustained a $10 million loss under the contract. *Id.*

The court in *MAPCO* found that the supplier sustained this loss because DFSC's price adjustment clause "did not divide the risk of economic uncertainty between the parties" as the Federal Acquisition Regulation ("FAR") required. *Id.* at 408, 412. The court held that the FAR, in order to protect contractors, authorizes prices to be adjusted in only one of three ways. *Id.* at 408, 414. The PMM indexes, the court held, did not adjust prices in an authorized way. *Id.* at 408-11.

As the court explained, FAR § 16.203-1 provides:

> Description.
>
> A fixed-price contract with economic price adjustment provides for upward and downward revision of the stated contract

> price upon the occurrence of specified contingencies. Economic price adjustments are of three general types:
>
> (a) *Adjustments based on established prices.* These price adjustments are based on increases or decreases from an agreed upon level in published or otherwise established prices of specific items or the contract end items.
>
> (b) *Adjustments based on actual costs of labor or material.* These price adjustments are based on increases or decreases in specified costs of labor or material that the contractor actually experiences during contract performance.
>
> (c) *Adjustments based on cost indexes of labor or material.* These price adjustments are based on increases or decreases in labor or material cost standards or indexes that are specifically identified in the contract.

27 Fed. Cl. at 408.

In considering whether DFSC's price adjustment clause complied with these provisions, the court initially held that DFSC's use of the PMM indexes did not provide for price adjustments based on established prices, as set forth in FAR § 16.203-1(a), because price adjustments were based on an average of market prices and not on the contractor's own established prices. 27 Fed. Cl. at 408-11. The court then held that DFSC's use of the PMM indexes did not provide for price adjustments based on actual costs, as set forth in FAR § 16.203-1(b), because price adjustments were not based on costs. *Id.* Finally, the court held that DFSC's use of the PMM indexes did not provide for price adjustments based on cost indexes, as set forth in FAR § 16.203-1(c), because adjustments were based on an index of prices, not costs. *Id.*

Because DFSC's use of the PMM indexes did not adjust prices in one of the three ways authorized by the FAR, the court held that DFSC's price adjustment clause was illegal. *Id.* at 408. The Court admonished DFSC that, where the government violates the law in pricing a contract, "the government cannot, by law, benefit from it." *Id.* at 408 (quoting *Beta Systems, Inc.*

*v. United States*, 838 F.2d 1179, 1185 (Fed. Cir. 1988)); *see generally LaBarge Products, Inc. v. West*, 46 F.3d 1547, 1552-53 (Fed. Cir. 1995) (A contractor may "seek reformation of its price term, even after performance, if that term was allegedly diminished by unlawful government acts.").[2]

---

[2] DFSC has alleged that it obtained individual and class deviations permitting it to use price indexes in its price adjustment clause. 64 Fed. Reg. 41834 (Aug. 2, 1999). Even to the extent that such deviations may have been obtained, they are without legal effect.

The FAR only permits individual deviations to be used for a single contract. FAR subpt. 1.4. The alleged individual deviations were used for multiple contracts -- not individual contracts. The alleged individual deviations therefore violate the FAR and are void. *Id.*

In addition, DFSC failed to comply with publication and notification requirements in connection with seeking the deviations. The FAR requires that "significant revisions" to the FAR, such as the deviations affecting billions of dollars of fuel purchases, be published in the Federal Register for public comment *before* they are finally adopted. FAR subpt. 1.5. So too, 5 U.S.C. § 552(a)(1)(C), requires prior publication, and 5 U.S.C. § 801(a)(1)(A) requires prior congressional notification. *See also* 41 U.S.C. § 418(b) (establishing additional but not exclusive publication requirements).

DFSC has conceded its obligation to comply with these publication requirements. In its reply brief to the Federal Circuit in *Barrett Refining Corporation v. United States*, DFSC states that: "[I]t was not until 1996, that DFSC learned that approval by the Director of Defense Procurement was not sufficient for obtaining a deviation from FAR § 16.203 and that publication of the deviation in the Federal Register was also required. See Reply Brief of Appellant at 12 (May 25, 2000). DFSC's failure to comply with these prior publication and notification requirements renders the alleged deviations void.

DFSC's alleged deviations suffer other legal infirmities as well. DFSC should have sought an "appropriate revision to the FAR" rather than a class deviation because DFSC knew that a deviation would be required on a permanent basis. FAR § 1.404. Also, it does not appear that DFSC complied with the Regulatory Flexibility Act, which requires, inter alia, that certain determinations be made concerning impact on small businesses. 5 U.S.C. § 601 *et seq.* DFSC has stated that it was not required to comply with the Regulatory Flexibility Act because its use of price indexes "does not represent a change for small entities." 64 Fed. Reg. at 41835. While DFSC's deviations may not have represented a change in the status quo for small or large businesses -- inasmuch as DFSC had been violating the FAR for nearly two decades -- this does not justify failure to comply with the Regulatory Flexibility Act.

*(Footnote cont'd on next page)*

As a result of the decision in *MAPCO*, DFSC has been forced to concede the illegality of its price adjustment clause in the Federal Circuit, the United States Court of Federal Claims, and the *Federal Register*. *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2001) (reflecting DFSC's contention that it made payments under the illegal price adjustment clause by mistake); *Phoenix Petroleum v. United States*, No. 98-5124, 1999 U.S. App. LEXIS 16939 at * 5 (Fed. Cir. July 23, 1999); *Pride Companies, L.P. v. United States*, No. 95-597C (Fed. Cl. May 10, 2000); *Gold Line v. United States*, 43 Fed. Cl. 291, 292 (1999); 64 Fed. Reg. 41,834 (Aug. 2, 1999).[3]

---

*(Footnote cont'd from previous page.)*

Finally, while the Federal Circuit has held that the rulemaking requirements of 5 U.S.C. § 553 do not apply to the FAR or modifications thereto, *Essex Electro Engineers, Inc. v. United States*, 960 F.2d 1576 (Fed. Cir. 1992), this holding does not appear consistent with the legislative intent or history of these provisions of the Administrative Procedure Act. DFSC did not comply with 5 U.S.C. § 553 here.

[3] In addition to violating the FAR's restrictions on price adjustments, DFSC violated the law in several other respects in awarding Kern's contract. Most notably, DFSC awarded the Contract pursuant to an illegal auction. Under DFSC contract clauses providing for preferential evaluation and consideration of bids submitted by small and small disadvantaged businesses, DFSC disclosed to small and small disadvantaged businesses the amount of the lowest bids submitted. Small and small disadvantaged businesses were then permitted to match these bids (sometimes within ten percent). Such an auction violated the Office of Federal Procurement Policy Act, 41 U.S.C. § 423 (1990), and FAR 15.610(e). In *La Barge Products, Inc. v. West*, 46 F.3d 1547 (Fed. Cir. 1995), the Federal Circuit held that an auction violating these provisions rendered a contract illegal. *Id.* at 1552-53.

In addition, DFSC did not award the Contract in compliance with DFAR § 252.219-7001. Contrary to the requirements of this provision, DFSC did not award the portions of the procurement for large businesses before awarding the portion of the procurement set aside for small and small disadvantaged businesses. Nor did DFSC re-solicit to large businesses the portions of the procurement set aside for, but not ultimately awarded to, small and small disadvantaged businesses.

Finally, contrary to the Supreme Court's decision in *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995), the preferences extended by DFSC to small, disadvantaged businesses violated the equal protection component of the Fifth Amendment's due process clause, because they

*(Footnote cont'd on next page)*