The court in *MAPCO* held that DFSC's use of a price index to determine adjustments was illegal. *See MAPCO*, 27 Fed. Cl. at 408-11. In this case, DFSC used *Platts*, which is an index of prices. Accordingly, the use of *Platts* is likewise illegal.

## III. KERN IS ENTITLED TO BE PAID THE FAIR MARKET VALUE OF THE FUEL IT SUPPLIED

The Federal Circuit has held that suppliers of fuel to DFSC are entitled to be paid the fair market value of the fuel they delivered under contracts containing DFSC's illegal price adjustment clause. *Barrett Refining Corp. v. United States,* 242 F.3d 1055 (Fed. Cir. 2001); *see also Pride Companies, L.P. v. United States,* No. 95-597C, (Fed. Cl. May 10, 2000). A number of different legal theories support Kern's right to be paid the fair market value of the fuel it supplied to DFSC. Each of these legal theories is discussed separately below.

### A. Illegality

Where the government violates the law in pricing a contract, a contractor is entitled to "equitable relief." *Gould, Inc. v United States*, 935 F.2d 1271, 1275 (1991). The government's violation of the law gives rise to three different equitable remedies: *quantum valebant*, reformation, and rescission and restitution.

---

*(Footnote cont'd from previous page.)*

were not narrowly tailored measures that furthered compelling government interests through remedying prior harms or otherwise. *See also Adarand Constructors, Inc. v. Mineta*, 121 S.Ct. 1401 (2001) (granting *cert.* to review the lower court's implementation of the Supreme Court's original *Adarand* decision).

All of these illegalities affected the contract price Kern received and entitle Kern to be paid the fair market value of the fuel it delivered to DFSC under the same legal theories and in the same amounts applicable to Kern's recovery for DFSC's illegal price adjustment clause.

*Quantum valebant* permits recovery of the fair market value of goods delivered under an illegal contract. *Urban Data Systems v. United States,* 699 F.2d 1147, 1155 (Fed. Cir. 1983). In *Barrett*, the Federal Circuit affirmed an award of *quantum valebant* to a DFSC supplier for fuel delivered under DFSC's illegal price adjustment clause. 242 F.3d at 1059-61. The Federal Circuit expressly upheld the lower court's finding that "'once the unauthorized [price escalation] clause is struck out, . . . [the] express contract simply incorporates an implied-in-fact promise by the government to pay at least fair market value for the fuel delivered.'" *Id.* at 1059 (brackets and ellipses in original).

Consistent with the holding in *Barrett*, in *Pride*, a DFSC supplier recovered $45 million in *quantum valebant* because of DFSC's illegal price adjustment clause. *Pride*, slip op. at 8. Similarly, in *Gold Line*, the court upheld the supplier's right to recover *quantum valebant*, although the amount of recovery was left for further proceedings. *Gold Line*, 43 Fed. Cl. at 296. Like the suppliers in *Barrett*, *Pride* and *Gold Line*, Kern is entitled to recover under *quantum valebant* the fair market value of the fuel it supplied to DFSC. *See generally Phoenix Petroleum*, No. 98-5124, 1999 U.S. App. LEXIS 16939, at *5 (noting that "other parties have since prevailed before the Court of Federal Claims in recovering government underpayments stemming from illegal application of B19.33 [DFSC's illegal price adjustment clause]").[4]

[4] The holding in *Northrop Grumman Corp. v. United States*, 47 Fed. Cl. 20, 40-41 (Fed. Cl. 2000), that the Court of Federal Claims lacks jurisdiction to award recovery under *quantum valebant* was overruled in *Barrett Refining Corp. v. United States*, 242 F.3d. at 1060-61. *See also AT&T v. United States*, 177 F.3d 1368, 1374 (Fed. Cir. 1999); *Clark v. United States*, 95 U.S. 539, 542 (1877); *Crocker v. United States*, 240 U.S. 74, 81 (1916); *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 566 n.22 (1961). Indeed, the government was compelled to stipulate to recovery under *quantum valebant* in *Pride*.

0110

Alternatively, where the government violates the law in pricing a contract, a contractor may seek to reform the contract price. In *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988), the government used an illegal price adjustment clause and the Federal Circuit held that "reformation was appropriate." *Id.* at 1186. In *LaBarge Products, Inc. v. West*, 46 F.3d 1547 (Fed. Cir. 1995), the government allegedly established the price of a contract through an illegal auction. *Id.* at 1552. The Federal Circuit held that the contractor could "seek reformation of its price term, even after performance, if that term was allegedly diminished by unlawful government acts." *Id.* at 1552-53. In *Gold Line*, the court expressly held that reformation was an available remedy for DFSC's illegal price adjustment clause. *Gold Line*, 43 Fed. Cl. at 298. As in *LaBarge*, *Beta Systems*, and *Gold Line*, Kern is entitled to reform the price of its contract to reflect the fair market value of the fuel it supplied.

Finally, where the government violates the law in pricing a contract, the contractor may rescind the contract and recover restitution. *See* 6A Arthur Linton Corbin, *Corbin on Contracts*, § 1540 (1962). The measure of Kern's restitution is the fair market value of the fuel it delivered to DFSC. *Id.*[5]

[5] The remedy of rescission and restitution is equally available before and after completion of performance. *Aluminum Company of America v. Essex Group, Inc.*, 499 F. Supp. 53, 78 (W.D. Pa. 1980) ("where one or both parties have performed under the supposed contract, the courts award appropriate restitution in light of the benefits the parties have conferred on each other"); G. Palmer, II *Law of Restitution* § 8.6 at 206 (1979) ("If both parties were mistaken as to the facts making the transaction illegal, restitution should be granted . . . no policy justifies denial of relief to the faultless party when the other party has been unjustly enriched.").

**B. Misrepresentation**

A misrepresentation is an assertion not in accordance with the facts. *Morris v. United States*, 33 Fed. Cl. 733 (1995) (citing *Restatement (Second) of Contracts* § 159). It may be expressed through words or conduct or may occur where a party failed to disclose facts that related to a basic contract assumption. *Restatement (Second) of Contracts* §§ 159, 161.

A misrepresentation is actionable if it is either "material" or "fraudulent." *Badgley v. United* States, 31 Fed. Cl. 508, 514 (1994) (citing *Restatement (Second) of Contracts* § 164); *CTA Incorporated v. United States*, 44 Fed. Cl. 684, 698 (1999) (same). A material misrepresentation is one that is reasonably likely to induce assent, whereas a fraudulent misrepresentation is a knowing or recklessly-made misrepresentation. *Restatement (Second) of Contracts* § 162. A fraudulent misrepresentation is actionable even if not material. *Restatement (Second) of Contracts* § 164 cmt. b.

DFSC's award of the Contract was an affirmative misrepresentation that the Contract complied with the law. *See Northrop Grumman Corp. v. United States*, No. 97-276C, slip op. at 11-13 (Fed. Cl., Dec. 20, 1999) (rejecting the government's assertion that the award of an allegedly illegal contract constituted "no affirmation of fact or promise" sufficient to create a warranty that the Navy complied with the FAR in awarding the contract). In addition to this affirmative misrepresentation, DFSC's failure to disclose its violation of the law was a misrepresentation because the legality of the Contract was a basic contract assumption. *See Restatement (Second) of Contracts* §§ 159 cmt. a, 160-161 (1981).

These material and/or fraudulent misrepresentations by DFSC (including by the contracting officer) were relied upon by Kern and induced Kern to enter into the Contract. DFSC's misrepresentations entitle Kern to be paid the fair market value of the fuel it delivered to DFSC, whether by way of rescission and restitution, damages, or reformation. *See T. Brown*

*Constructors, Inc. v. Pena*, 132 F.3d 724, 728 (Fed. Cir. 1997) (damages); *Roseburg Lumber Co. v. Madigan*, 978 F.2d 660, 665-67 (Fed. Cir. 1992) (rescission and restitution and reformation).

**C. Breach of Contract**

When DFSC entered the Contract, it had a contractual obligation to comply with the law. *Slagan v. John Whitman & Assoc.*, No. 97-3961, 1997 U.S. Dist. LEXIS 14146, *10-11 (E.D. Pa. Sept. 10, 1997); *Hartzell v. Burdick*, 398 N.Y.S.2d 649, 650 (1997). When DFSC violated the FAR by using an illegal price adjustment clause, DFSC breached the Contract. *Id.*

In *Northrop Grumman Corp. v. United States*, No. 97-276C (Fed. Cl., Dec. 20, 1999), the contractor alleged that the Navy's award of a fixed-price development contract in violation of the FAR was a breach of contract. *Id.* slip op. at 11. The court held that the contractor's breach of contract claim could proceed to trial, rejecting the government's assertion that the Navy's award of the contract constituted "no affirmation of fact or promise necessary" to support a breach of contract claim. *Id.* slip op. at 11-13.

Like the Navy's alleged breach in *Northrop Grumman,* DFSC breached the Contract by violating the FAR. *Id.*; *see also Slagan*, 1997 U.S. Dist. LEXIS 14146, *10-11; *Hartzell*, 398 N.Y.S.2d at 650. Because DFSC breached the Contract, Kern is entitled to be paid the fair market value of the fuel it delivered to DFSC, whether by way of rescission and restitution or damages. *See Estate of Berg v. United States*, 687 F.2d 377, 379 (Ct. Cl. 1982) (damages); *Resolution Trust Corp. v. Federal Savings and Loan Ins. Corp.*, 25 F.3d 1493, 1504-06 (10th Cir. 1994) (rescission and restitution).

### D. Failure of Consideration

A claim of "failure of consideration exists wherever one who has promised to give some performance fails, without his fault, to receive in some material respect the agreed exchange for that performance." *Williston on Contracts* § 814 (3d Ed.) (1962); *see also City of New York v. United States*, 106 Ct. Cl. 141, 151 (1946). The doctrine of failure of consideration supports contractual relief even in the absence of a breach of contract and without regard to the fault of the non-performing party. *Aerojet-General Corp. v. Askew*, 453 F.2d 819, 831 (5th Cir. 1971) (quoting *Corbin on Contracts*). A failure of consideration may occur "with reference to the formation of the contract or with reference to its performance." Walter H.E. Jaeger, *Williston on Contracts* § 814, p. 16.[6]

In *Davis Airfoils, Inc. v. United States*, 124 F. Supp. 350 (Ct. Cl. 1954), a patent was declared invalid during the term of a license agreement. *Id.* at 353. The Court of Claims found a failure of consideration because the subject matter of the contract never lawfully existed. *Id.* Similarly, in *Louisiana v. Wood*, 102 U.S. 294 (1880), the Supreme Court upheld a claim of failure of consideration by a purchaser of illegally-issued bonds. The Court held that "[t]he consideration on which the payment was made has failed, because the bonds were not, in fact, valid obligations of the city." *Id.* at 298.

---

[6] While the Federal Rules of Civil Procedure recognize that failure of consideration may be raised as an affirmative defense, Fed. R. Civ. P. 8(c), failure of consideration also may be raised as an affirmative claim for relief. *District of Columbia v. Thompson*, 281 U.S. 25, 32-22 (1930); *Louisiana v. Wood*, 102 U.S. 294, 298 (1880); *Woodbury v. District of Columbia*, 92 F.2d 202, 203 (Ct. App. D.C. 1937); *see generally Far West Federal Bank v. Office of Thrift Supervision*, 930 F. 2d 883, 886 (Fed. Cir. 1991) (plaintiff advancing claim with regard to bank conversion agreement on the grounds of failure of consideration).

Here, as in *Davis Airfoils* and *Wood*, compliance with the law was a material part of the consideration for entering the Contract. Like the illegalities in *Davis Airfoils* and *Wood*, the illegality in Kern's contract caused consideration to fail. *Davis Airfoils*, 124 F. Supp. at 353; *Wood*, 102 U.S. at 298.[7]

Because there was a material failure of consideration for the Contract, Kern is entitled to rescind the Contract and to recover restitution reflecting the fair market value of the fuel it delivered to DFSC. *FDIC v. Air Florida System, Inc.*, 822 F.2d 833, 839 (9th Cir. 1987).

**E. Mutual Mistake**

In *Beta Systems, Inc. v. United States*, 838 F.2d 1179 (Fed. Cir. 1988), a contract contained an economic price adjustment clause that violated the DAR, the predecessor regulations to the FAR, because the price adjustment clause did not approximate the changes in the contractor's costs. *Id.* at 1186. Despite this violation of the DAR, the court found that the parties had intended that the contract comply with the law. The court stated:

> The government does not challenge that Beta did not intend to use an index that would effectively eliminate its principal construction material from fair weight in the inflation adjustment. And there is a legal presumption that the government did not intend to use an index that would violate the law as embodied in the DAR.

*Id.* at 1186.

---

[7] In addition, a material purpose and condition of the price adjustment clause and of the Contract itself was that the price adjustment clause and the Contract comply with the law and result in prices that reflected fair market value. Because the price adjustment clause and the Contract did not comply with the law or result in prices that reflected fair market value, the purpose of the Contract was frustrated and a condition of the Contract failed. Accordingly, Kern may recover the fair market value of the fuel it delivered to DFSC by way of rescission and restitution. *Office of the Comptroller General of the Republic of Bolivia v. International Promotions and Ventures, LTD*, 618 F. Supp. 202 (S.D.N.Y. 1985); *Unihealth v. U.S. Healthcare, Inc.*, 14 F. Supp. 2d 623 (D.N.J. 1998); *Restatement (Second) of Contracts* § 377 (1979).

Because both parties intended to comply with the law, the court held the contract could be reformed, stating: "If the contract is in violation of the DAR, and does not meet the requirement that an index be selected that approximately tracks the economic changes affecting this contract, then reformation is appropriate." *Id.*; *see also Gold Line*, 43 Fed. Cl. at 297 (relying on *Beta Systems* to uphold reformation of DFSC's illegal price adjustment clause); *Craft Machine Works*, 90-3 BCA ¶ 23,095, at 115,696 (relying on *Beta Systems* to reform an EPA clause that violated the FAR and replace it with "an alternate interpretation consistent with the parties' intentions and the law").

Here, Kern intended to enter into a contract that complied with the FAR and which resulted in prices that reflected fair market value. If DFSC did not misrepresent or is not otherwise held to know these facts as previously alleged,[8] then DFSC may be presumed as a matter of law to have intended to comply with the FAR when it entered into the Contract and to have intended to use a price adjustment clause which resulted in prices that reflected fair market value. *Id.*; *see also Barrett Refining*, 242 F.3d at 1062 (DFSC alleged that it made payments under its illegal price adjustment clause "because of a mistake of law."). Had Kern and DFSC been aware of their mistake, they would not have used DFSC's illegal price adjustment clause.

Accordingly, because Kern and DFSC were mutually mistaken about material elements of the price of the Contract, Kern is entitled to reform the Contract to correct the parties' mutual mistake and to reflect their intent to provide for payment of the fair market value of the fuel Kern

[8] Of course, if DFSC were aware, actually or constructively, of Kern's mistake concerning DFSC's compliance with the FAR, Kern may recover on the grounds of a unilateral mistake. *Buesing v. United States*, 42 Fed. Cl. 679, 695 (1999).

delivered. *Beta Systems*, 838 F.2d at 1186; *Craft Machine Works*, 90-3 BCA at 115,696.[9] Alternatively, because of the parties' mutual mistake, Kern may recover the fair market value of the fuel it delivered by way of rescission and restitution. *Rust Engineering Co.*, B-180071, 74-1 CPD ¶ 101 (mutual mistake concerning applicability of state sales tax supports rescission and restitution); Richard A. Lord, *Williston on Contracts* § 12:6 p. 93 (4th Ed.).

**F. Fifth Amendment Taking**

The government may grant statutory or regulatory rights relating to contracts with the United States. *United States Trust Company v. New Jersey*, 431 U.S. 1, 18-19, n.14 & n.17 (1977); *Del-Rio Drilling Program, Inc. v. United States*, 146 F.3d 1358, 1364 (Fed. Cir. 1998) (determination of property interests may turn on federal statutes or regulations). Statutory or regulatory rights relating to contracts vest when the contract is entered, and a taking occurs when the government violates these statutory or regulatory rights. *Perry v. United States*, 294 U.S. 330 (1935); *Lynch v. United States*, 292 U.S. 571 (1934); *see generally United States v. Winstar*, 518 U.S. 839, 876 (1996) ("it is clear that the National Government has some capacity to make agreements binding future Congresses by creating vested rights.").

In *Perry*, Congress authorized the issuance of bonds redeemable in gold, but later sought to alter those redemption rights. 294 U.S. at 346-47. Because the bondholders' statutory rights to redeem in gold had vested upon purchasing the bonds, Congress's subsequently altering the terms of the bonds was held to have effected a taking. *Id.* at 350-54. Similarly, in *Lynch*,

[9] As *Beta Systems* makes clear, reformation is an available remedy even if the mistake might be characterized as involving a mistake of law. 838 F. 2d at 1186; *see also Restatement (Second) of Contracts* § 151 cmt. b; *see generally Blackhawk Hotels Co.*, ASBCA No. 13333, 68-2 BCA ¶ 7265 (contractor would be entitled to an equitable adjustment when the government mistakenly represented that the Service Contract Act did not apply to the procurement), *overruled on other grounds, National Line Co.*, ASBCA No. 18739, 75-2 BCA ¶ 11,400.